IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ALAN J. ROBERTS                          :                    CIVIL ACTION
                                         :
            v.                           :
                                         :
TIME PLUS PAYROLL SERVICES, INC.  :                    NO.  07-4101

### ORDER - MEMORANDUM

**AND NOW**, this 6th day of February, 2008, upon consideration of Defendant's "Motion to Dismiss/Compel Arbitration" (Docket No.10), and all documents filed in connection therewith, **IT IS HEREBY ORDERED** that the Motion is **GRANTED** as follows:

1.      The arbitrator-selection provision of the September 5, 2005 Arbitration Agreement is **STRICKEN**;

2.      The Parties shall **PROCEED** with arbitration of Plaintiff's claims, as required by the September 5, 2005 Arbitration Agreement except that the arbitrator(s) will be chosen mutually by the parties[1];

3.      This action is **DISMISSED**.

I.      BACKGROUND

        The Complaint alleges the following facts.  Plaintiff Alan J. Roberts was employed in the payroll processing business for over 20 years with Payroll Data Systems and is over 40 years of age. (Compl. ¶¶ 7, 12.)  On August 31, 2005, Defendant Time Plus Payroll Services, Inc. ("Time Plus") acquired all of the assets of Payroll Data Systems.  (Id. ¶ 13.)  Plaintiff remained employed by Time Plus as sales manager and vice-president.  (Id. ¶¶ 13-14.)  On September 1, 2005, Plaintiff was

---

        [1]If the parties are unable to mutually agree to an arbitrator, we will appoint an arbitrator for them.

effectively demoted to an hourly rate job and a woman under the age of 40 was hired by Time Plus

to perform the duties of sales manager.  (Id. ¶¶ 16-19.)  Time Plus terminated Plaintiff's employment

on September 30, 2005.  (Id. ¶ 22.)  Younger employees were given the opportunity to remain with

Time Plus at the same salary and benefits they had with Payroll Data Systems.  (Id. ¶ 23.)  The

Complaint asserts age discrimination claims against Time Plus pursuant to the Age Discrimination

in Employment Act, 29 U.S.C. § 623(a), and the Pennsylvania Human Relations Act, 43 Pa. Stat.

Ann. § 955.

      Defendant contends that Plaintiff should be compelled to arbitrate his claims pursuant to an

Arbitration Agreement he executed in consideration of his employment with Time Plus on

September 5, 2005.  (Def. Ex. B.)  The Arbitration Agreement states, in pertinent part, as follows:

> Employees specifically agree, without limiting the interpretation of
> this section, to forgo litigation and to submit to arbitration all claims
> under Title VII (Equal Employment Opportunity Act), under Federal
> Age Discrimination Act (ADEA), under any other applicable
> employment or human rights laws, rules and regulations, including,
> but not limited to, any city, county and state laws (and claims under
> the Employment Retirement Income Security Act (ERISA).  Said
> arbitration shall be conducted by an arbitrator or panel of arbitrators
> as Time Plus, Inc., in it's [sic] sole discretion, shall elect.  If any
> portion of this agreement is found unenforceable, that portion shall
> fail while the remainder of this agreement continues in full force and
> effect.

(Def. Ex. B.)

## II.    LEGAL STANDARD

      Time Plus asks us to enforce the Arbitration Agreement pursuant to the Federal Arbitration

Act ("FAA"), 9 U.S.C. §§ 1-16.  Section 2 of the FAA provides that:

> [a] written provision in any . . . contract evidencing a transaction
> involving commerce to settle by arbitration a controversy thereafter

> arising out of such contract . . . or an agreement in writing to submit
> to arbitration an existing controversy arising out of such a contract .
> . . shall be valid, irrevocable, and enforceable, save upon such
> grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.  If an action is filed in federal court involving an issue that is subject to an agreement

for arbitration, the court must "stay the trial of the action until such arbitration has been had in

accordance with the terms of the agreement . . . ."  9 U.S.C. § 3.  In deciding a motion to compel

arbitration, the Court considers two questions:   1) whether the parties are subject to a valid

arbitration agreement and 2) whether their "dispute falls within the scope of that agreement."

Dabney v. Option One Mortgage Corp., Civ. A. No. 00-5831, 2001 WL 410543 at *1 (E.D. Pa. Apr.

19, 2001) (citing John Hancock Mut. Life Ins. Co. v. Olick, 151 F.3d 132, 137 (3d Cir. 1998)).

III.    DISCUSSION

It is undisputed that the claims asserted in the Complaint are within the scope of the

Arbitration Agreement.  The issue before the Court, therefore, is whether the Arbitration Agreement

is enforceable against Plaintiff.   "'Questions concerning the interpretation and construction of

arbitration agreements are determined by reference to federal substantive law.'" Gay v. CreditInform,

511 F.3d 369, 2007 WL 4410362, at *14 (3d Cir. Dec. 19, 2007) (quoting Harris v. Green Tree Fin.

Corp., 183 F.3d 173, 179 (3d Cir. 1999)).  However, contract defenses that arise under state law,

"'such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements

without contravening § 2 [of the FAA].'"  Id. (quoting Doctor's Assocs., Inc. v. Casarotto, 517 U.S.

681, 687 (1996)).[2]  Plaintiff opposes enforcement of the Arbitration Agreement on the ground that

---

[2]We look to Pennsylvania's choice of law rules to determine which state's laws apply to
Plaintiff's defenses to the Arbitration Agreement in this case.  See O'Brien v. Pennington School,
Civ. A. No. 06-2101, 2008 WL 160588, at *5 (E.D. Pa. Jan. 15, 2008) (noting that "a federal district
court sitting in diversity must apply the choice of law rules of the forum state" (citing Klaxon Co.

the provision in the Agreement that gives Time Plus sole discretion to select the arbitrator or arbitration panel is unconscionable and renders the entire Agreement unenforceable.

"Unconscionability is a 'defensive contractual remedy which serves to relieve a party from an unfair contract or from an unfair portion of a contract.'" Harris v. Green Tree Fin. Corp., 183 F.3d 173, 181 (3d Cir. 1999) (quoting Germantown Mfg. Co. v. Rawlinson, 491 A.2d 138, 145 (Pa. Super. Ct. 1985). Under Pennsylvania law, "[a] party challenging a contract provision as unconscionable generally bears the burden of proving that the provision is procedurally and substantively unconscionable." O'Shea v. Direct Fin. Solutions, LLC, Civ. A. No. 07-1881, 2007 WL 4373038, at *2 (E.D. Pa. Dec. 5, 2007) (citing Alexander v. Anthony Int'l, L.P., 341 F.3d 256, 265 (3d Cir. 2003)). "Procedural unconscionability pertains to the process by which an agreement is reached and the form of an agreement . . . . This element is generally satisfied if the agreement constitutes a contract of adhesion." Alexander, 341 F.3d at 265 (citations omitted). "A contract of adhesion is one which is prepared by the party with excessive bargaining power who presents it to the other party for signature on a take-it-or-leave-it basis." Id. (internal quotation omitted). The element of substantive unconscionability is satisfied if there are terms of the agreement that

---

v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941))). The Pennsylvania courts apply the law of the state which "'has the most significant relationship to the parties.'" Id. (quoting Restatement (2d) of Conflicts of Laws § 188(1)). In determining which state has the most significant relationship to the parties, the Restatement (2d) of Conflicts of Laws suggests the following factors: "the place of contracting, the place of negotiation of the contract, the place of performance, the location of the subject matter of the contract, and the domicile, residence, nationality, place of incorporation and place of business of the parties." Id. (citing Restatement (2d) of Conflicts of Laws § 188(2)). Pennsylvania courts also consider the location "'where the contract requires that the services, or a major portion of the services, be rendered.'" Id. (quoting Restatement (2d) of Conflicts of Laws § 196). We find that Pennsylvania law applies to Plaintiff's defenses to arbitration in this case because both Plaintiff and Defendant are located in Pennsylvania, the Arbitration Agreement was entered into in Pennsylvania, and the Arbitration Agreement applied to Plaintiff's employment in Pennsylvania.

"unreasonably favor one party to which the disfavored party does not truly assent."  Id. (citations omitted).

Plaintiff claims that the Arbitration Agreement is procedurally unconscionable because he signed it in a take it or leave it situation shortly after Time Plus acquired his employer and demoted him.  Time Plus does not contest Plaintiff's assertion that he had no choice but to accept the terms of the Arbitration Agreement in a take it or leave it situation.  Accordingly, we find that the element of procedural unconscionability is met in this case.  See Alexander, 341 F.3d at 266 ("Plaintiffs nevertheless were still presented with a 'take-it-or-leave-it' agreement to arbitrate by a multinational corporation.  Because plaintiffs had no real choice but to accept these terms, they have established the existence of procedural unconscionability.").  Plaintiff further claims that the provision of the Arbitration Agreement that allows Time Plus, at its sole discretion, to choose the arbitrator or arbitrators is substantively unconscionable.  We find that an agreement giving only one side a voice in choosing the adjudicator raises an appearance of partiality and conclude that this provision is substantively unconscionable as it clearly and unreasonably favors Time Plus.

Time Plus suggests that we may sever the choice of arbitrator provision of the Arbitration Agreement and enforce the remainder of the Agreement in accordance with the final sentence of the Agreement:  "If any portion of this agreement is found unenforceable, that portion shall fail while the remainder of this agreement continues in full force and effect."  (Def. Ex. B.)  "Under Pennsylvania contract law, a party my enforce legal provisions of a contract containing an illegal provision provided that the primary purpose of the contract or an essential part of the agreed exchange is not affected by disregarding the illegal provision."  Prusky v. Reliastar Life Ins. Co., 445 F.3d 695, 699 (3d Cir. 2006) (citing Spinetti v. Service Corp. Int'l, 324 F.3d 212, 219-20 (3d Cir.

5

2003); <u>Huber v. Huber</u>, 470 A.2d 1385, 1390-91 (Pa. Super. Ct. 1984); and <u>Forbes v. Forbes</u>, 48 A.2d 153, 156 (Pa. Super. Ct. 1946)).  We find that the primary purpose of the Arbitration Agreement was "to provide a mechanism to resolve employment-related disputes," not to manage the selection of arbitrators.  <u>Spinetti</u>, 324 F.3d at 219.  We find, accordingly, that we may strike the unconscionable provision of the Arbitration Agreement and modify the Agreement to require that the parties mutually select an arbitrator or arbitrators to resolve Plaintiff's claims.  <u>See</u> <u>Spinetti</u>, 324 F.3d at 220 ("Under Pennsylvania law, 'a court of equity may not only remove an offensive term, but may supply a new, limiting term and enforce the covenant so modified. This unique power to modify the parties' contract . . . arises from the general equity powers of the court.'" (quoting <u>Bell Fuel Corp. v. Cattolico</u>, 544 A.2d 450, 457 (Pa. Super. Ct. 1988), and citing <u>Barb-Lee Mobile Frame Co. v. Hoot</u>, 206 A.2d 59, 60 (Pa. 1965))).

Defendant's Motion to Dismiss/Compel Arbitration is, therefore, granted except that the provision of the Arbitration Agreement which allows Time Plus to select an arbitrator or arbitrators to resolve Plaintiff's claims is stricken as unconscionable and the Agreement is modified to require the parties to mutually agree upon an arbitrator or arbitrators.[3]

BY THE COURT:

/s/ John R. Padova

_____

John R. Padova, J.

---

[3]Defendant asks that we require Plaintiff to submit to arbitration before the American Arbitration Association ("AAA").  The Arbitration Agreement does not require that the parties submit their disputes to the AAA and we decline to add that requirement to the Arbitration Agreement.  The parties shall mutually agree upon an arbitrator or arbitrators and are not required to select their arbitrator(s) from the AAA.  If the parties are unable to mutually agree upon an arbitrator or arbitrators, we will appoint an arbitrator for them.